[Cite as *Long v. Hanging Rock*, 2011-Ohio-5137.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
LAWRENCE COUNTY


WILLIAM J. LONG,                               :

    Plaintiff-Appellee,                    :       Case No.   09CA30


    vs.                                              :

VILLAGE OF HANGING ROCK, et al.,    :       DECISION AND JUDGMENT ENTRY


    Defendants-Appellants.               :

_____
APPEARANCES:

COUNSEL FOR APPELLANTS:      Lawrence E. Barbiere and John W. Hust, 5300
Socialville-Foster road, Suite 200, Mason, Ohio 45040

COUNSEL FOR APPELLEE:        Jennifer L. Routte, Richard M. Lewis, and Christen N.
Finely, 295 Pearl Street, P.O. Box 664, Jackson, Ohio
45640
_____
CIVIL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED: 9-28-11

ABELE, J.

{¶ 1}   This is an appeal from a Lawrence County Common Pleas Court judgment that

denied summary judgment to the Village of Hanging Rock and Chris Steed, defendants below

and appellants herein. Appellants raise the following assignments of error for review:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN OVERRULING CHIEF

STEED'S MOTION FOR SUMMARY JUDGMENT WITH
REFERENCE TO LONG'S CLAIM FOR INVASION OF
PRIVACY."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN OVERRULING THE
VILLAGE'S MOTION FOR SUMMARY JUDGMENT AS TO
LONG'S CLAIM FOR WRONGFUL DISCHARGE IN
VIOLATION OF PUBLIC POLICY."

{¶ 2}   On June 21, 2005, appellee, the Hanging Rock Chief of Police, suffered an injury

in the course and scope of employment.   Appellee subsequently received workers' compensation

benefits as a result of this injury.   On June 29, 2006, the Hanging Rock mayor advised appellee

that he was being terminated because his doctor restricted him from running, which rendered him

unable to perform a fitness and agility test.

{¶ 3}   On December 18, 2007, appellee filed a complaint against Hanging Rock and

Chris Steed that contained several claims arising out of his termination.   On April 7, 2009,

appellee filed an amended complaint against Hanging Rock, Christopher Davidson (the mayor),

Carole Goldcamp (the clerk-treasurer), and Chris Steed (police chief).   His first claim asserted

that Hanging Rock violated R.C. 4123.90 by discharging him in retaliation for filing a workers'

compensation claim.   Appellee's second claim alleged that Hanging Rock wrongfully discharged

him in violation of public policy.   In his third claim, appellee asserted that Hanging Rock and

the mayor converted his pension fund contributions.   Appellee's fourth claim alleged that his

discharge violated 42 U.S.C. 1983.   In his fifth claim, appellee requested the trial court to enter a

declaratory judgment that the fitness policy was invalid.   In his sixth claim, appellee requested

the trial court to issue a writ of mandamus compelling Hanging Rock to restore appellee to his

employment.    Appellee's seventh claim alleged that Steed invaded his privacy by: (1) intruding into appellee's seclusion, solitude or private affairs; (2) publishing appellee's likeness in such a way that placed appellee in a false light; and (3) appropriating appellee's name or likeness for his advantage, which proximately caused appellee humiliation, embarrassment, harm and damages.

{¶ 4}   Both parties requested summary judgment.   On November 17, 2009, the trial court overruled appellee's summary judgment motion, and overruled in part and granted in part appellants' summary judgment motion.   The court entered summary judgment in favor of the mayor and the clerk-treasurer, and granted appellants summary judgment with respect to all claims except appellee's wrongful discharge in violation of public policy claim, appellee's 42 U.S.C. 1983 claim, appellee's claim against Steed for invasion of privacy, and appellee's mandamus claim.   This appeal followed.

{¶ 5}   In their two assignments of error, appellants challenge the trial court's partial denial of their summary judgment motion.   Because the same standard and some general principles apply to both assignments of error, we will consider them together.

{¶ 6}   In their first assignment of error, appellants assert that the trial court erred by denying Steed statutory immunity with respect to appellee's invasion of privacy claim.   They contend that Steed is statutorily immune from liability because no genuine issues of material fact exist as to whether (1) Steed acted with malicious purpose, in bad faith, or in a wanton or reckless manner, or (2) Steed acted outside the scope of his employment.   Appellants posit that whether Steed acted with malicious purpose, in bad faith, or in a wanton or reckless manner, or whether he acted outside the scope of his employment turns upon whether appellee possesses a legally sufficient invasion of privacy claim.   Appellants claim that if appellee cannot establish

the elements of his invasion of privacy claim, then he ipso facto cannot demonstrate that Steed

acted with malicious purpose, in bad faith, or in a wanton or reckless manner, or that he acted

outside the scope of his employment.   Specifically, appellants assert:

> "If [appellee] has no legally sufficient claim for invasion of privacy, then
> [appellee] cannot demonstrate that * * * Steed acted with malicious purpose, in
> bad faith, or in a wanton and reckless manner, or that * * * Steed acted outside the
> scope of his employment, pre-requisites for defeating the immunity of an
> employee of a political subdivision."

{¶ 7}   In their second assignment of error, appellants contend that the trial court erred by

overruling Hanging Rock's summary judgment motion regarding appellee's wrongful discharge

in violation of public policy claim.   They argue that under R.C. Chapter 2744, Hanging Rock is

immune from liability for appellee's wrongful discharge claim, i.e., an intentional tort claim.

Appellant's further claim that appellee's wrongful discharge claim is subsumed within his R.C.

4123.90 claim (retaliatory discharge claim), which is time-barred.   Appellants additionally assert

that appellee does not have a valid wrongful discharge in violation of public policy claim.

I

SCOPE OF REVIEW

{¶ 8}   Before we examine appellants' assignments of error, we first must define our

scope of review.

{¶ 9}   Ohio appellate courts have jurisdiction to review the final orders of inferior courts

within their district.   Section 3(B)(2), Article IV, Ohio Constitution; R.C. 2501.02.   A final,

appealable order is one that affects a substantial right and determines the action.   R.C.

2505.02(B)(1).   If a judgment is not final and appealable, an appellate court does not have

jurisdiction to review the judgment and the appeal must be dismissed.   See, e.g., Mtge.

Electronic Registrations Sys. v. Mullins, 161 Ohio App.3d 12, 2005–Ohio–2303, 829 N.E.2d 326, ¶17.   In the event that the parties involved with the appeal do not raise a jurisdictional issue, the appellate court must raise it sua sponte.   Chef Italiano Corp. v. Kent State Univ. (1989), 44 Ohio St.3d 86, 541 N.E.2d 64, syllabus; Whitaker–Merrell v. Geupel Co. (1972), 29 Ohio St.2d 184, 186, 58 O.O.2d 399, 280 N.E.2d 922.

{¶ 10}  "Generally, the denial of summary judgment is not a final, appealable order." Hubbell v. Xenia, 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, ¶9, citing State ex rel. Overmeyer v. Walinski (1966), 8 Ohio St.2d 23, 24, 37 O.O.2d 358, 222 N.E.2d 312.   However, a trial court's order to deny summary judgment on the basis of statutory immunity constitutes a final order.   See R.C. 2744.02(C); Sullivan v. Anderson Twp., 122 Ohio St.3d 83, 2009-Ohio-1971, 909 N.E.2d 88, syllabus; Hubbell, syllabus; Essman v. Portsmouth, Scioto App. No. 08CA3244, 2009-Ohio-3367, ¶10, motion to certify allowed, 127 Ohio St.3d 1544, 2011-Ohio-647, 941 N.E.2d 802, and discretionary appeal accepted, 127 Ohio St.3d 1545, 2011-Ohio-647, 941 N.E.2d 803.   R.C. 2744.02(C) explicitly states that an order denying "a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order." However, appellate review under R.C. 2744.02(C) is limited to the denial of immunity.   See Nagel v. Horner, 162 Ohio App.3d 221, 2005-Ohio-3574, 833 N.E.2d 300, ¶21 (stating that R.C. 2744.02(C) limits appellate review to denial of immunity and does not authorize court to review merits of the action); Makowski v. Kohler, Summit App. No. 25219, 2011-Ohio-2382, ¶7 (stating that an R.C. 2744.02(C) appeal "is limited to the review of alleged errors in the portion of the trial court's decision which denied the political subdivision the benefit of immunity"); see,

also, Essman; CAC Bldg. Properties v. City of Cleveland, Cuyahoga App. No. 91991, 2009–Ohio–1786, ¶9, fn. 1; Carter v. Complete Gen. Constr. Co., Franklin App. No. 08AP–309, 2008–Ohio–6308, ¶8. Thus, a party may not raise other alleged errors concerning the denial of summary judgment.

{¶ 11} In the case at bar, both appellants and appellee raise various arguments concerning the merits of appellee's claims. However, the only issue properly before us at this juncture is whether appellants are entitled to R.C. Chapter 2744 immunity. The merits of the claims are not presently subject to appellate review. See Essman. Thus, to the extent that the parties' arguments focus upon the merits of the claims, we will not consider them. We will, however, consider the arguments to the extent that they present an issue regarding the trial court's denial of statutory immunity.

II

SUMMARY JUDGMENT STANDARD

{¶ 12} Appellate courts conduct a de novo review of trial court summary judgment decisions. See, e.g., Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Accordingly, an appellate court must independently review the record to determine if summary judgment is appropriate and need not defer to the trial court's decision. See Brown v. Scioto Bd. of Commrs. (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153; Morehead v. Conley (1991), 75 Ohio App.3d 409, 411-12, 599 N.E.2d 786. To determine whether a trial court properly granted a summary judgment motion, an appellate court must review the Civ.R. 56 summary judgment standard, as well as the applicable law. Civ. R. 56(C) provides in relevant part:

* * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.

{¶ 13} Thus, pursuant to Civ.R. 56, a trial court may not grant summary judgment unless the evidence demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and after viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. See, e.g., Vahila v. Hall (1997), 77 Ohio St.3d 421, 429-30, 674 N.E.2d 1164.

III

R.C. CHAPTER 2744

{¶ 14} As a general rule, political subdivisions are immune from civil liability. See R.C. 2744.01(A)(1). However, a political subdivision may be subject to civil liability if one of the five situations specified in R.C. 2744.01(B) applies. A political subdivision employee is also entitled to a general grant of immunity, but may be liable if one of the three circumstances described in R.C. 2744.03(A)(6) applies.

A

POLITICAL SUBDIVISION EMPLOYEE IMMUNITY

{¶ 15} Appellants first assert that the trial court improperly determined that Steed, a political subdivision employee, is not immune from liability for appellee's invasion of privacy claim. Appellants posit that whether Steed is entitled to immunity turns upon whether appellee has established a valid invasion of privacy claim. Appellants argue that appellee has failed to establish a valid invasion of privacy claim, which they assert also demonstrates that he cannot show that Steed acted in bad faith, with malice, or in a wanton, willful, or reckless manner. Appellants further contend that appellee failed to show that any of the R.C. 2744.03(A)(6)[1] exceptions to immunity applies.

{¶ 16} When determining whether a political subdivision employee is entitled to immunity, R.C. 2744.03(A)(6) is the starting point.[2] See MacCabee v. Mollica, Athens App. No. 09CA32, 2010-Ohio-4310, ¶16 and fn.3 (observing that three-tier analysis applicable to political subdivision inapplicable to political subdivision employee). The provision states:

> (6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless

_____

[1] In Lambert v. Clancy, 125 Ohio St.3d 231, 2010-Ohio-1483, 927 N.E.2d 585, the court held that the R.C. 2744.03(A)(6) political subdivision employee immunity analysis does not apply when the complaint is lodged against the officeholder in his official capacity. In such a situation, the court stated, the R.C. 2744.02(B) analysis applies. In the case sub judice, neither party has raised any issue as to which immunity analysis applies to appellee's claim against Steed. Rather, both parties apparently agree that R.C. 2744.03(A)(6) applies. We therefore have no need to analyze which of the two statutes we should apply.

[2] We note that we informally stayed a decision in this matter pending the outcome of Zumwalde v. Madeira & Indian Hill Joint Fire Dist., —— Ohio St.3d ——, 2011-Ohio-1603, 946 N.E.2d 748. Zumwalde considered whether R.C. 2744.09(B) (which excepts a civil action that arises out of the employment relationship from R.C. Chapter 2744) removes a political subdivision employee's immunity, or whether it removed just the political subdivision's immunity. If R.C. 2744.09(B) were construed to apply to the employee, then any analysis of R.C. 2744.03(A)(6) would be irrelevant. Zumwalde ultimately held that "R.C. 2744.09(B) removes immunity only as to the political subdivision and does not affect the statutory immunity of the fellow employee." Id. at syllabus. We therefore proceed with the R.C. 2744.03(A)(6) analysis.

one of the following applies:

      (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

      (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

      (c) Civil liability is expressly imposed upon the employee by a section of

the Revised Code. Civil liability shall not be construed to exist under another

section of the Revised Code merely because that section imposes a responsibility

or mandatory duty upon an employee, because that section provides for a criminal

penalty, because of a general authorization in that section that an employee may

sue and be sued, or because the section uses the term "shall" in a provision

pertaining to an employee.

**{¶ 17}** As a general matter, whether an employee is entitled to R.C. 2744.03(A)(6)

immunity is ordinarily a question of law.   See, e.g., <u>Conley v. Shearer</u> (1992), 64 Ohio St.3d

284, 292, 595 N.E.2d 862; <u>Mathews v. Waverly</u>, Pike App. No. 08CA787, 2010-Ohio-347, ¶14.

However, "whether an individual acted manifestly outside the scope of employment," and

whether the employee acted with malicious purpose, in bad faith, or in a wanton or reckless

manner generally are questions of fact.   See <u>Theobald v. Univ. of Cincinnati</u>, 111 Ohio St.3d

541, 2006-Ohio-6208, 857 N.E.2d 573, ¶14; <u>Fabrey v. McDonald Police Dept.</u> (1994), 70 Ohio

St.3d 351, 356, 639 N.E.2d 31; see, also, <u>Brockman v. Bell</u> (1992), 78 Ohio App.3d 508, 517,

605 N.E.2d 445 (stating that "because the line between willful and wanton misconduct and

ordinary negligence can be a fine one, the issue of whether conduct was willful or wanton should

be submitted to the jury for consideration in light of the surrounding circumstances when

reasonable minds might differ as to the import of the evidence").   Thus, a trial court may not

grant summary judgment on the basis of R.C. 2744.03(A)(6)(a) or (b) immunity unless

reasonable minds can only conclude that (1) the employee did not act outside the scope of his

employment, or (2) the employee did not act with malicious purpose, in bad faith, or in a wanton

or reckless manner.   If reasonable minds could disagree on these issues, then a court may not

grant the employee summary judgment based upon statutory immunity.   Summary judgment in

favor of a political subdivision's employee is proper if the employee's actions "showed that he

did not intend to cause harm, * * * did not breach a known duty through an ulterior motive or ill

will, [and] did not have a dishonest purpose."   Hackathorn v. Preisse (1995) 104 Ohio App.3d

768, 772, 663 N.E.2d 384.

{¶ 18}  As the above case authority makes clear, whether a political subdivision employee

is entitled to immunity under R.C. 2744.03(A)(6)(b) will ordinarily be a question of fact.

Summary judgment is appropriate only when the facts are clear and fail to rise to the level of

conduct that could be construed as malicious, in bad faith, or wanton and reckless.

1

Outside Scope of Employment Exception

{¶ 19}  "An employee's wrongful act, even if it is unnecessary, unjustified, excessive or

improper, does not automatically take the act manifestly outside the scope of employment."

Elliot v. Ohio Dept. Of Rehab. & Corr. (1994), 92 Ohio App.3d 772, 775, 637 N.E.2d 106; see,

also, Curry v. Blanchester, Clinton App. Nos. CA2009-08-10 and CA2009-08-12,

2010-Ohio-3368.   Rather, "[t]he act must be so divergent that it severs the employer-employee

relationship."   Elliot, 92 Ohio App.3d at 775.   "'It is only where the acts of state employees are

motivated by actual malice or other [situations] giving rise to punitive damages that their conduct

may be outside the scope of their state employment.'" Jackson, 144 Ohio App.3d at 307, quoting James H. v. Dept. of Mental Health & Mental Retardation (1980), 1 Ohio App.3d 60, 61, 439 N.E.2d 437.   On the other hand, ""'[c]onduct is within the scope of employment if it is initiated, in part, to further or promote the master's business.""'   Curry v. Blanchester, Clinton App. Nos. CA2009-08-10 and CA2009-08-12, 2010-Ohio-3368, ¶30, quoting Jackson v. McDonald (2001), 144 Ohio App.3d 301, 307, 760 N.E.2d 24, quoting Martin v. Cent. Ohio Trans. Auth. (1990), 70 Ohio App.3d 83, 92, 590 N.E.2d 411.

2

Malicious Purpose, in Bad Faith, or in a Wanton or Reckless Manner Exception

**{¶ 20}** The term "malice" means the willful and intentional desire to harm another, usually seriously, through conduct which is unlawful or unjustified.   Hicks v. Leffler (1997), 119 Ohio App.3d 424, 428-429, 695 N.E.2d 777.   "Bad faith" implies sinister motive that has "no reasonable justification."   Id. at 429.   "Bad faith" embraces more than bad judgment or negligence.   Id., citing Parker v. Dayton Metro. Hous. Auth. (May 31, 1996), Montgomery App. No. 15556.   It imports a "dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.   It also embraces actual intent to mislead or deceive another."   Id.; Jackson v. Butler Cty. Bd. of Cty. Commrs. (1991), 76 Ohio App.3d 448, 454, 602 N.E.2d 363.

**{¶ 21}** Wanton misconduct has been defined as the failure to exercise any care whatsoever.   See Fabrey, 70 Ohio St.3d at 356, citing Hawkins v. Ivy (1977), 50 Ohio St.2d 114, 4 O.O.3d 243, 363 N.E.2d 367, syllabus.   The Ohio Supreme Court held that "'mere negligence is not converted into wanton misconduct unless the evidence establishes a disposition to

perversity on the part of the tortfeasor.'"   See id., quoting <u>Roszman v. Sammett</u> (1971), 26 Ohio

St.2d 94, 96-97, 55 O.O.2d 165, 269 N.E.2d 420.   Such perversity requires that the actor be

conscious that his conduct will, in all likelihood, result in an injury.   See id.   Moreover, the

standard of proof to show wanton misconduct is high.   Id.

{¶ 22}  "Reckless" refers to conduct that causes an unreasonable risk of harm and is

"'substantially greater than that which is necessary to make [an actor's] conduct negligent.'"

<u>Thompson v. McNeill</u> (1990), 53 Ohio St.3d 102, 104-105, 559 N.E.2d 705, quoting 2

Restatement of the Law 2d, Torts (1965) 587, Section 500.   Likewise, an individual acts

recklessly when he or she, bound by a duty, does an act or intentionally fails to do an act,

knowing, or having reason to know, of facts that would lead a reasonable person to realize not

only that there is an unreasonable risk of harm to another, but also that such risk is substantially

greater than that which is necessary for negligence.   See id.; see, also, <u>Fabrey</u>, 70 Ohio St.3d at

356.

3

Application

{¶ 23} In the case at bar, we agree with the trial court that genuine issues of material fact

remain as to whether Steed acted with a malicious purpose, in bad faith, or in a wanton or

reckless manner.   Steed posted a mocking picture of appellee at the police station.   Steed

allegedly generated this picture by pasting appellee's head on a picture of an obese-looking,

naked man holding a gun over his genital area with the caption, "Ready for my return to work.

Bobbi where the F*** is my gun belt."   Although Steed may hold the opinion that the picture is

"just * * * funny," and a harmless "humorous cartoon," appellee obviously does not find it funny

or humorous.   A reasonable person could conclude that Steed's motivation in posting the picture was to humiliate appellee.   A reasonable person may also infer that Steed was conscious that posting the picture would, in all probability, result in injury to appellee and that his conduct demonstrates a disposition to perversity.   Thus, a reasonable person might conclude that Steed's conduct demonstrates malice, bad faith, or wanton or reckless conduct.[3]   Consequently, the trial court properly determined that Steed is not entitled to summary judgment on the basis of statutory immunity regarding appellee's invasion of privacy claim.

{¶ 24}  Furthermore, contrary to appellants' argument, nowhere in R.C. 2744.03(A)(6) or elsewhere in the political subdivision employee immunity statutes does it state that the employee immunity question centers upon the validity of the civil claim.   Thus, we reject appellants' argument that Steed is entitled to immunity because appellee allegedly failed to set forth a valid invasion of privacy claim.   Furthermore, to the extent that appellants request that we evaluate the merits of appellee's invasion of privacy claim, we cannot.   As we explained, supra, the only proper issue before us is the trial court's denial of immunity.   We must not, at this stage of the proceedings, review the merits of the civil claims.

{¶ 25}  Accordingly, based upon the foregoing reasons, we hereby overrule appellants' first assignment of error.

B

POLITICAL SUBDIVISION IMMUNITY

{¶ 26}  In their second assignment of error, appellants assert that the trial court erred by

---

3 Because we have determined that the R.C. 2744.03(A)(6)(b) exception applies, we need not consider whether R.C. 2744.03(A)(6)(a) also applies.

overruling Hanging Rock's summary judgment motion regarding appellee's claim of wrongful discharge in violation of public policy. They first assert that under R.C. Chapter 2744, a "political subdivision cannot be held liable for intentional torts." Appellants further contend that appellee's wrongful discharge in violation of public policy claim "is subsumed in his statutory claim under R.C. 4123.90 and is barred because it is untimely and because it fails to state a claim under that statute."

{¶ 27} Determining whether a political subdivision has immunity under Chapter 2744 of the Ohio Revised Code generally involves a three-tiered analysis. Lambert v. Clancy, 125 Ohio St.3d 231, 927 N.E.2d 585, 2010-Ohio-1483, ¶8; Cramer v. Auglaize Acres, 113 Ohio St.3d 266, 270, 2007-Ohio-1946, 865 N.E.2d 9, ¶14. First, R.C. 2744.02(A)(1) sets forth the general rule that a political subdivision is immune from tort liability for acts or omissions connected with governmental or proprietary functions. See, e.g., Cramer; Colbert v. Cleveland, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶7; Harp v. Cleveland Hts. (2000), 87 Ohio St.3d 506, 509, 721 N.E.2d 1020. Second, R.C. 2744.02(B) lists five exceptions to the general immunity granted to political subdivisions under R.C. 2744.02(A)(1). See, e.g., Cramer; Ryll v. Columbus Fireworks Display Co., 95 Ohio St.3d 467, 470, 2002-Ohio-2584, 769 N.E.2d 372, ¶25. Finally, if liability exists under R.C. 2744.02(B), R.C. 2744.03(A) sets forth several defenses that re-instate a political subdivision's immunity. See Cramer; Colbert at ¶ 9.

{¶ 28} Under R.C. 2744.09, however, R.C. Chapter 2744 "does not apply to, and shall not be construed to apply to" certain actions. As relevant in the case sub judice, R.C. Chapter 2744 does not apply to "[c]ivil actions by an employee * * * against his political subdivision relative to any matter that arises out of the employment relationship between the employee and

the political subdivision[.]"   "[C]laims that are causally connected to an individual's

employment fit into the category of actions that are 'relative to any matter that arises out of the

employment relationship.'"   Nagel v. Horner, 162 Ohio App.3d 221, 833 N.E.2d 300,

2005-Ohio-3574, ¶19, quoting R.C. 2744.09(B).

{¶ 29}  A wrongful discharge claim is the type of civil action that falls within the scope of

R.C. 2744.09(B).   See Gessner v. Union 159 Ohio App.3d 43, 2004-Ohio-5770, 823 N.E.2d 1,

¶35 (stating that "wrongful discharge appears to be precisely the type of situation contemplated

by R.C. 2744.09").   A claim for wrongful discharge exists only in light of an employment

relationship and, thus, necessarily arises out of the employment relationship.   As the Gessner at

¶31, court explained:

> "Discharge is clearly a matter that stems from an employment relationship.
>  Consequently, because R.C. 2744.09 allows suit against political subdivisions for
> matters arising out of an employment relationship, actions for wrongful discharge
> would be permitted."

{¶ 30}  Thus, in the case at bar, under R.C. 2744.09(B) the political subdivision tort

liability act does not apply to appellee's claim against Hanging Rock for wrongful discharge in

violation of public policy.

{¶ 31}  Appellants nevertheless argue that R.C. 2744.09(B) does not apply to appellee's

wrongful discharge in violation of public policy claim and that Hanging Rock "has immun[ity]

with reference to this claim because there is no such claim under Ohio law against it in this case."

 Appellants additionally assert that appellee waived any argument that R.C. 2744.09(B) applies

by raising it for the first time in a supplemental filing to this court entitled "Notice of

Presentation of Additional Case."   In this filing, appellee cited Zumwalde, which involved R.C.

2744.09.

{¶ 32} We first observe that it is not clear whether the trial court relied upon R.C. 2744.09(B) when it denied Hanging Rock's summary judgment motion with respect to the wrongful discharge in violation of public policy claim.   Instead, the court determined, in a conclusory fashion, that genuine issues of material fact remained.    Nevertheless, even if R.C. 2744.09(B) did not form part of the trial court's decision, we may rely upon that statute as an alternate basis to uphold the trial court's judgment.   See Goudlock v. Voorhies, 119 Ohio St.3d 398, 2008–Ohio–4787, 894 N.E.2d 692, ¶12 (stating that reviewing court may not reverse correct judgment simply because trial court relied upon erroneous rationale); see, also, State ex rel. McGrath v. Ohio Adult Parole Auth., 100 Ohio St.3d 72, 2003–Ohio–5062, 796 N.E.2d 526, ¶8; Amore v. Ohio Turnpike Comm., Summit App. No. 25227, 2011-Ohio-1903, ¶29, quoting McKay v. Cutlip (1992), 80 Ohio App.3d 487, 491, 609 N.E.2d 1272 (stating that reviewing court is "'required to affirm the trial court's judgment if any valid grounds are found on appeal to support it'").

{¶ 33} We also reject appellants' assertion that appellee waived the right to argue the applicability of R.C. 2744.09(B) by failing to specifically mention it during the trial court proceedings.   The R.C. Chapter 2744 immunity issue involves a purely legal question that we review de novo.   Thus, we have authority to review the trial court's decision and to state an additional rationale for upholding the trial court's decision to deny Hanging Rock summary judgment.   See Ignazio v. Clear Channel Broadcasting, Inc. 113 Ohio St.3d 276, 2007-Ohio-1947, 865 N.E.2d 18, ¶19 (stating that even though party did not raise severability issue during lower court proceedings, de novo standard of review applicable to contract

interpretation entitled court to consider it).   Furthermore, "[i]f an issue was properly raised in the trial court, new legal arguments in support of a party's contention on that issue may be raised in the court of appeals."   See Painter & Pollis, Ohio Appellate Practice (2010 Ed.), Section 7:4. The immunity issue, in general, was raised during the trial court proceedings.   R.C. 2744.09(B) is a new legal argument in support of that issue that appellee may raise on appeal.

{¶ 34} We further disagree with appellants' related argument that under the overall structure of R.C. Chapter 2744, Hanging Rock, as a political subdivision, cannot be held liable for an intentional tort.   Appellants submit that Ohio case law is "clear" that a political subdivision cannot be liable for an intentional tort.   Contrary to appellants' assertion, Ohio case law is muddled as to whether a political subdivision may be held liable for an intentional tort. See Vacha v. N. Ridgeville, Lorain App. No. 10CA9750, 2011-Ohio-2446 (holding that employer intentional tort claim falls within R.C. 2744.09(B) definition of "civil actions); Buck v. Reminderville, Summit App. No. 25272, 2010-Ohio-6497, discretionary appeal allowed, — Ohio St.3d —, 2011-Ohio-2055, 946 N.E.2d 240, (holding that a political subdivision employee's defamation claim against political subdivision for intentionally tortious conduct may constitute a civil action that arises out of the employment relationship); Nagel, supra (holding that retaliation and hostile work environment claims, even though intentional torts, fall within scope of R.C. 2744.09(B) and recognizing confusion in Ohio law regarding whether intentional torts fall within meaning of R.C. 2744.09(B)).   But, see, Zieber v. Heffelfinger, Richland App. No. 08CA0042, 2009-Ohio-1227, ¶29 (holding that R.C. 2744.09(B) does not apply to "employer intentional torts"); Coats v. Columbus, Franklin App. No. 06AP-681, 2007-Ohio-761, ¶15 (R.C. 2744.09(B) does not apply to intentional torts because such torts occur, by definition, outside of the

employment relationship); <u>Williams v. McFarland Props. LLC</u>, 177 Ohio App.3d 490, 895 N.E.2d 208, 2008-Ohio-3594, ¶18 (holding that "employer intentional tort" not within scope of R.C. 2744.09(B)); <u>Thayer v. W. Carrollton Bd. of Educ.</u>, Montgomery App. No. 20063, 2004-Ohio-3921, ¶17; <u>Engleman v. Cincinnati Board of Education</u> (June 22, 2001), Hamilton App. No. C-000597.   Based upon our prior holding in <u>Nagel</u> and the reasoning in <u>Gessner</u>, we disagree with appellants' argument that it cannot be held liable for the intentional tort of wrongful discharge in violation of public policy.

{¶ 35} Lastly, we do not consider appellants' claim that Hanging Rock is immune from liability because appellee allegedly does not have a valid claim for wrongful discharge in violation of public policy or that this claim is time-barred.   We have determined that R.C. Chapter 2744 does not apply to this particular claim and, thus, that Hanging Rock is not entitled to invoke the statutory immunity provisions.   Consequently, any statutory immunity analysis is inappropriate.   Moreover, we cannot review the merits of appellee's claim for wrongful discharge in violation of public policy.   See R.C. 2744.02(C) and our discussion, supra.

{¶ 36} Accordingly, based upon the foregoing reasons, we hereby overrule appellants' second assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellants the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Lawrence County

Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the

Rules of Appellate Procedure.

Harsha, P.J.: Concurs in Judgment & Opinion
McFarland, J.: Concurs in Judgment Only

For the Court

BY:_____
Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.