[Cite as *Clark v. Campbell*, 2020-Ohio-3333.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| CHRISTOPHER A. CLARK, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 19CA3673 |
| | : | |
| vs. | : | |
| | : | DECISION AND JUDGMENT |
| TERRI D. CAMPBELL, ET AL., | : | ENTRY |
| | : | |
| Defendants-Appellants. | : | |
| | : | |

_____

APPEARANCES:

Josh L. Schoenberger, Williams & Schoenberger Co. LLC, Columbus, Ohio, for Appellants.

Michael D. O'Neill, Gary F. Franke, Gary F. Franke Co. L.P.A., Cincinnati, Ohio, for Appellee.

Timothy McKay, Cincinnati, Ohio, for Defendant The Standard Fire Insurance Company.[1]

_____

Smith, P.J.

{¶1} Terri D. Campbell ("Appellant Campbell") and the Ross County Board of Developmental Disabilities ("Appellant Ross County") appeal the trial court's February 4, 2019 judgment which overruled their joint motion for summary judgment. Both Appellants sought summary judgment on the

_____
[1] The Standard Fire Insurance Company has not participated in this appeal.

basis of their entitlement to sovereign immunity pursuant to Chapter 2744 and, in the alternative, immunity pursuant to the Workers' Compensation Chapter 4123. As will be discussed below, we conclude that the trial court erred in denying summary judgment to Appellants. Accordingly, we sustain the third assignment of error and need not consider the first and second assignments of error as those have become moot. We hereby reverse the judgment of the trial court.

FACTUAL AND PROCEDURAL BACKGROUND

{¶2} On October 20, 2015, Christopher Clark ("Appellee") and Appellant Campbell were involved in a motor vehicle collision in Ross County, Ohio. Appellee was operating an all-terrain vehicle (ATV). Appellant Campbell was operating a Dodge caravan owned by Appellant Ross County. Appellant Ross County provides services to individuals with developmental disabilities.

{¶3} Appellant Campbell is the transportation coordinator for Appellant Ross County. On the date of the accident, Appellant Campbell had been assisting in searching for a child missing from the Pioneer Center. The Pioneer Center is a school for special needs individuals ages 5-21.

{¶4} On January 17, 2017, Appellee filed suit alleging personal injuries and medical expenses against both appellants and The Standard Fire

Insurance Company, alleging that Appellant Clark was negligent. Further, Appellee alleged that Appellant Campbell was in the course and scope with her employment with Appellant Ross County. Appellee also asserted a claim for respondeat superior/wrongful entrustment against Appellant Ross County. Appellee's claim against the insurance company was for uninsured/underinsured motorist coverage.

{¶5} The defendants filed answers denying liability. Particularly, Appellant Ross County asserted that it is not *sui juris* and is not a proper party defendant. Appellant Ross County further asserted that both appellants are statutorily immune from tort liability for negligence under R.C. 2744. Appellant Ross County also asserted that Appellee's claims against Appellant Campbell are barred by the exclusivity of the workers' compensation remedy under R.C. 4123.741, and Appellee's claims against Appellant Ross County are barred by the exclusivity of the workers' compensation remedy available under R.C. 4123.74.

{¶6} The parties engaged in written discovery. The record indicates the parties deposed Appellee. The parties also deposed Leia Snyder and Appellant Campbell. Leia Snyder is superintendent of Ross DD. At the time of the accident, Snyder was employed as assistant superintendent.

{¶7} Snyder testified that she assists in drafting policies and procedures and oversees implementation of the policies and procedures. The situation involving the missing child was considered an MUI (Major Unusual Incident.) On the date of the accident general policies and procedures were established; however, Snyder is not sure if there was anything specific as to missing children.

{¶8} On October 20, 2017, Snyder received a phone call in the afternoon and learned that a child was missing. Snyder immediately instructed the administrative secretary with regard to requests for information. She also notified other management team members and left the building to assist in the search. Snyder testified Appellant Campbell's job duties involved handling the logistics of transportation and scheduling and overseeing transportation employees. Snyder testified Appellant Campbell's job duties did not involve searching for missing children.

{¶9} Appellant Campbell testified she began working for the Ross County Board of Developmental Disabilities in 2009 as a substitute bus driver. In 2015, she became transportation coordinator. Appellant Campbell has a CDL-Class B. She drives on all the field trips, approves trips, and coordinates routes with other school districts. Appellant Campbell is also a certified OBI (On-board Instructor.) She schedules trainings and actually

trains others to drive a school bus and school van. Appellant Campbell has a driving restriction for her vision. She has never received EMT or search and rescue training relating to her job with Appellant Ross County. Her daily work day begins at 8:00 a.m. and ends at 3:00 p.m.

{¶10} Appellant Campbell testified that around 2:30 p.m. she learned a child was missing from the Pioneer Center. Appellant Campbell immediately got into the van owned by the board of developmental disabilities and went to assist in the search. Her testimony was there was no formal search policy on that date: "they just really said like all-hands—you know, everyone to look."

{¶11} Appellant Campbell first searched near the Pioneer Center. Then she went to a nearby golf course. Other staff were at the golf course searching. Appellant Campbell thereafter received information that the child was near Veterans Parkway.

{¶12} The Veterans Parkway has two lanes of travel going opposite directions. There is no turn lane. The speed limit is 55-miles per hour. The Triangle Bike Path runs parallel to the Veterans Parkway. The Triangle Bike Path is for bicycles and pedestrians and is approximately five feet wide, with no lane markings and no speed limit markers.

{¶13} Appellant Campbell immediately drove to the parkway. She was stopped at a red light. Shortly after arrival at the Veterans Parkway area, Appellant Campbell received a phone call advising her that the missing child had been located.

{¶14} At this point, Appellant Campbell testified that she turned onto Veterans Parkway and pulled into a turnaround spot in a private drive. She talked with a couple of other Appellant Ross County employees and advised them that the child was found. The other employees left. Appellant Campbell proceeded to turn the van to leave. She testified that in order to exit the Veterans Parkway one has to cross the bike path, and that the turnaround area is approximately five feet wide and paved.

{¶15} Appellant Campbell testified she looked both ways. The nose of her vehicle was heading back onto the bike path when she incurred a hard impact on the passenger side of the van from Appellee's ATV. At the time of impact, Appellant Campbell was talking on her cell phone to a secretary at Pioneer Center, confirming that the child was found. Appellant Campbell denied seeing Appellee prior to the impact. The collision happened around 3:30 p.m.

{¶16} Appellant Campbell testified she exited the van and went to Appellee. She held his head. She learned he was also looking for the child.

{¶17} Both deponents testified there was a cell phone policy in place. Generally, one was not to use the cell phone while operating a work motor vehicle.

{¶18} On August 1, 2018, Appellants jointly filed a motion for summary judgment.  The Ross County Common Pleas Court docket sheet also reveals that on that date the depositions of Terri Campbell and Leia Snyder were filed with the court.  The docket does not reflect that the deposition of Christopher Clark has ever been filed in this matter. [2]

{¶19} Appellee filed a Memorandum in Opposition to Defendants' Motion for Summary Judgment.  Appellants jointly filed a reply.  On February 4, 2019, the trial court entered its order finding that there exist genuine issues of material fact and overruling the motion for summary judgment. This timely appeal followed.  Additional pertinent facts will be set forth below.

ASSIGNMENTS OF ERROR

"I. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DENYING ROSS COUNTY DD IMMUNITY FROM LIABILITY TO CLARK AS R.C.4123.74 REQUIRES MAKING THE FEBRUARY 4, 2019 ORDER IMMEDIATELY APPEALABLE UNDER R.C. 2744.02(C)."

"II.  THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DENYING CAMPBELL IMMUNITY FROM LIABILITY AS TO CLARK

---

[2] A telephone call from the appellate court to the Ross County Clerk of Court's confirmed that only the depositions of Campbell and Snyder were filed.

AS R.C. 4123.741 REQUIRES MAKING THE FEBRUARY 4, 2019 ORDER IMMEDIATELY APPEALABLE UNDER R.C.2744.02(C)"

"III. THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DENYING CAMPBELL IMMUNITY FROM LIABILITY TO CLARK AS R.C.2744.03(A)(6)."

## STANDARD OF REVIEW

{¶20} Appellate review of summary judgment decisions is de novo, governed by the standards of Civ.R. 56. *Vacha v. N. Ridgeville,* 136 Ohio St.3d 199, 2013-Ohio-3020, 992 N.E.2d 1126, ¶ 19; *Citibank v. Hine,* 130 N.E.3d 924, 2019-Ohio-464 (4th Dist.) at ¶27. Summary judgment is appropriate if the party moving for summary judgment establishes that (1) there is no genuine issue of material fact, (2) reasonable minds can come to but one conclusion, which is adverse to the party against whom the motion is made and (3) the moving party is entitled to judgment as a matter of law. *Capital One Bank (USA) N.A. v. Rose*, 4th Dist. Ross No. 18CA3628, 2018-Ohio-2209, at ¶ 23; Civ.R. 56; *New Destiny Treatment Ctr., Inc. v. Wheeler*, 129 Ohio St.3d 39, 2011-Ohio-2266, 950 N.E.2d 157, ¶ 24; *Chase Home Finance, LLC v. Dunlap,* 4th Dist. Ross No. 13CA3409, 2014-Ohio-3484, ¶ 26.

{¶21} The moving party has the initial burden of informing the trial court of the basis for the motion by pointing to summary judgment evidence and identifying parts of the record that demonstrate the absence of a genuine

issue of material fact on the pertinent claims. *Dresher v. Burt,* 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996); *Chase Home Finance* at ¶ 27; *Hine* at ¶ 28. Once the moving party meets this initial burden, the non-moving party has the reciprocal burden under Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue remaining for trial. *Dresher* at 293, 75 Ohio St.3d 280, 662 N.E.2d 264. *See also Rose, supra*, at ¶ 24. In ruling on a motion for summary judgment, the court must construe the record and all inferences therefrom in the nonmoving party's favor. Civ.R. 56(C). *State ex rel Deem v. Pomeroy,* 2018-Ohio-1120, 109 N.E.3d 30 (4th Dist.), at ¶ 19.

## LEGAL ANALYSIS

1. <u>Is this a final appealable order?</u>

In this case, the trial court overruled Appellants' joint motion for summary judgment. The record indicates that the claims against The Standard Fire Insurance Company remain pending. The trial court's order does not contain a Civ.R. 54(B) certification.

{¶22} R.C. 2744.02(C) provides:

"An order that denies a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order."

 "When a trial court denies a motion in which a political

subdivision or its employee seeks immunity under R.C. Chapter 2744, that order denies the benefit of an alleged immunity and thus is a final, appealable order pursuant to R.C. 2744.02(C)." *Wright v. Village of Williamsport,* 4th Dist. Pickaway No. 18CA14, 2019-Ohio-2682, at fn.1, quoting *Hubbell v. Xenia,* 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, ¶ 27. In *Sullivan v. Anderson Twp.,* 122 Ohio S.3d 83, 2009-Ohio-1971, 909 N.E.2d 88, the Supreme Court of Ohio considered the appealability of the trial court's order which denied the township the benefit of an alleged immunity in a multiparty, multiclaim lawsuit, but did not include the language required by Civ.R. 54(B), that "there is no just reason for delay." The Court concluded that such an order is a final, appealable order. The Court observed at ¶ 10:

> In this case, we need not apply the general rules for determining whether an order is final, and appealable. The general rules regarding final appealable orders in multiparty and/or multiclaim cases involve the tandem of R.C. 2505.02(B) for substance and Civ.R. 54(B) for procedure.
>
> *Noble v. Colwell*, 44 Ohio St.3d 92, 97, 540 N.E.2d 1381(1989).

Under the general rules, a court first applies R.C. 2505.02(B) to determine whether the order "affects a substantial right and whether it in effect

determines an action and prevents a judgment." *Wisintainer v. Elcen Power Strut Co.,* 67 Ohio St.3d 352, 354, 617 N.E.2d 1136 (1993). If the court of appeals determines that the trial court order is final under R.C. 2505.02, the next step is to determine whether the trial court certified the order with the language of Civ.R. 54(B)—"there is no just reason for delay." *Wisintainer,* 67 Ohio St.3d at 354-355, 617 N.E.2d 1136; *Noble,* 44 Ohio St.3d at 97, 540 N.E.2d 1381. The use of Civ.R. 54(B) certification by a trial court is discretionary. *Id*. at 96-97, 540 N.E.2d 1381, and fn. 7.

{¶23} The Supreme Court also noted that in the ordinary case, Civ.R. 54(B) certification demonstrates that the trial court has determined that an order, albeit interlocutory, should be immediately appealable, in order to further the efficient administration of justice and to avoid piecemeal litigation or injustice attributable to delayed appeals. *Anderson, supra*, at ¶ 11; *Wisintainer,* 67 Ohio St.3d at 356-357, 617 N.E.2d 1136; No*ble,* 44 Ohio St.3d at 96, 540 N.E.2d 1381. However, the *Anderson* court reasoned at ¶ 12:

> No such determination [Civ.R. 54(B) by the trial court is necessary; the General Assembly has expressly made that determination with the enactment of R.C. 2744.02(C), which makes final an order denying a political subdivision the benefit

of an alleged immunity from liability. *Hubbell,* 115 Ohio St.3d 77, 2007-Ohio-4839, 873 N.E.2d 878, at ¶ 27. Therefore, there is no reason for a trial court to certify under Civ.R. 54(B) that "there is no just cause for delay." When the denial of political-subdivision immunity is concerned, the trial court has no discretion to determine whether to separate claims or parties and permit an interlocutory appeal. *See* generally, *Mynes v. Brooks,* 124 Ohio St. 3d 13, 2009-Ohio-5946, 918 N.E.2d 511, at ¶ 10.

{¶24} In this case, the claim against The Standard Fire Insurance Company is still pending. There is no Civ.R. 54(B) certification. However, based upon the above authority, we proceed to consideration of Appellants' arguments.

2. Is Campbell entitled to immunity pursuant to R.C. 2744.03(A)(6)?

{¶25} For ease of analysis, we begin with Appellants' third assignment of error. Whether a political subdivision or its employee may invoke statutory immunity under R.C. Chapter 2744 generally presents a question of law. *Hoffman v. Gallia County Sheriff's Department,* 2017-Ohio-9192, 103 N.E.3d 1, (4th Dist.), at ¶ 38. E.g., *Nease v. Med. College Hosp.,* 64 Ohio St.3d 396, 400, 596 N.E.2d 432 (1992), quoting *Roe v.*

*Hamilton Cty. Dept. Of Human Servs.,* 53 Ohio App.3d 120, 126, 560

N.E.2d 238 (1st Dist. 1988) (citations omitted) (" 'Whether immunity may

be invoked is a purely legal issue, properly determined by the court prior to

trial, and preferably on a motion for summary judgment' "); *Conley v.*

*Shearer,* 64 Ohio St.3d 284, 292, 595 N.E.2d 862 (1992) (same); accord

*Williams v. Glouster,* 4th Dist. No. 10CA58, 2012-Ohio-1283, 2012 WL

1029470, ¶ 15; *Long v. Hanging Rock,* 4th Dist. Lawrence No. 09CA30,

2011-Ohio-5137, 2011 WL 4584930, ¶ 17.

{¶26} Here, it is argued that the trial court erred by denying Appellant

Campbell immunity from liability to Appellee, pursuant to R.C.

2744.03(A)(6).  R.C. 2744.03(A)(6) provides in pertinent part:

(A) In a civil action brought against a political subdivision or an

employee of a political subdivision to recover damages for

injury, death, or loss to person or property allegedly caused by

any act or omission in connection with a governmental or

proprietary function, the following defenses or immunities may

be asserted to establish nonliability:

***

(6) In addition to any immunity or defense referred to in

division (A)(7) of this section and in circumstances not covered

by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:

(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code. Civil liability shall not be construed to exist under another section of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee.

{¶27} As indicated, R.C. 2744.03(A)(6) grants employees of political subdivisions immunity from liability, unless any of three exceptions to that

immunity apply. *Strayer v. Barnett,* 2017-Ohio-5617, 94 N.3d 156

(2dDist.), at ¶ 37; *Anderson v. Massillon,* 134 Ohio St.3d 380, 2012-Ohio-

5711, 983 N.E.2d 266, ¶ 21.

{¶28} Appellee's complaint alleges that at the time of the accident,

Appellant Campbell negligently operated her vehicle while in the course and

scope of her employment with Appellant Ross County. Both appellants

admitted those allegations and have emphasized this admission in their brief.

In *Strayer, supra,* the appellate court observed that of the three exceptions to

immunity, only the second one, where the employee's acts or omissions

were with malicious purpose, in bad faith, or in a wanton or reckless

manner, were at issue. Upon review of the record, the *Strayer* court

observed:

[T]here is no allegation, or any facts to support, that the CCDD employees'

actions were manifestly outside the scope of their employment or official

responsibilities or that they acted with a malicious purpose or in bad faith.

there is no allegation, or any facts to support, that her actions were

manifestly outside the scope of her employment or official responsibilities or

that she acted with a malicious purpose or in bad faith.

The *Strayer* court, therefore, confined its discussion as to whether the CCDD

employees' conduct was wanton or reckless. Similarly, in this case, we

confine our discussion to whether Appellant Ross County's employee

Appellant Campbell was wanton or reckless;

{¶29} In *Strayer*, the appellate court discussed the legal definition of

the terms "wanton" and "reckless." The terms "wanton" and "reckless"

describe different and distinct degrees of care and are not interchangeable.

*Strayer, supra,* at ¶ 38; *Anderson v. Massillon,* 134 Ohio St.3d 380, 2012-

Ohio-5711, 983 N.E.2d 266, paragraph one of the syllabus. They are

sometimes described "as being on a continuum, i.e., willful conduct is more

culpable than wanton, and wanton conduct is more culpable than reckless."

*Id*. at ¶ 42 (Lanzinger, J., concurring in judgment in part and dissenting in

part).

{¶30} Both "wanton" and "reckless" represent "rigorous standards

that will in most circumstances be difficult to establish." *Strayer, supra,* at

¶ 39, quoting, *Argabrite v. Neer,* 149 Ohio St.3d 349, 2016-Ohio-8374, 75

N.E.3d 161, ¶ 8. "Wanton conduct" has been defined as "the failure to

exercise any care toward those to whom a duty of care is owed in

circumstances in which there is great probability that harm will result."

(Emphasis added.) *Anderson* at paragraph three of the syllabus; *Argabrite* at

¶ 8. "Reckless conduct is characterized by the conscious disregard of or

indifference to a known or obvious risk of harm to another that is

unreasonable under the circumstances and is substantially greater than negligent conduct." *Anderson* at ¶ 34, adopting 2 Restatement of the Law 2d, Torts, Section 500 (1965); *Argabrite* at ¶ 8.

{¶31} The *Strayer* court observed at ¶40:

Mere negligence in the performance of an employee's duties is insufficient to meet this high standard. See O'T*oole v. Denihan,* 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, ¶ 74.  As stated by the Ohio Supreme Court, an individual's conduct " 'is in reckless disregard of the safety of others if * * * such risk is substantially greater than that which is necessary to make his conduct negligent.' " *Fabrey v. McDonald Village Police Dept.,* 70 Ohio St.3d 351, 356, 639 N.E.2d 31 (1994), quoting 2 Restatement of the Law 2d, Torts, Section 500, at 587 (1965).

{¶32} We have previously observed that:

[W]hether an individual acted manifestly outside the scope of employment, and whether the employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner generally are questions of fact. *Long v. Hanging Rock,* 4th Dist. Lawrence No. 09CA30, 2011-Ohio-5137, at ¶17.  See *Theobald v. Univ. of Cincinnati,* 111 Ohio St.3d 541, 2006–Ohio–6208, 857 N.E.2d 573, ¶ 14; *Fabrey v. McDonald Police Dept.*, 70 Ohio St.3d 351, 356, 639 N.E.2d 31 (1994); (citation deleted.)  Thus, a trial court

may not grant summary judgment on the basis of R.C. 2744.03(A)(6)(a) or (b) immunity unless reasonable minds can only conclude that (1) the employee did not act outside the scope of his employment, or (2) the employee did not act with malicious purpose, in bad faith, or in a wanton or reckless manner. If reasonable minds could disagree on these issues, then a court may not grant the employee summary judgment based upon statutory immunity. Summary judgment in favor of a political subdivision's employee is proper if the employee's actions "showed that he did not intend to cause harm, * * * did not breach a known duty through an ulterior motive or ill will, [and] did not have a dishonest purpose." *Hackathorn v. Preisse*, 104 Ohio App.3d 768, 772, 663 N.E.2d 384 (9th Dist. 1995).

{¶33} As the above case authority makes clear, whether a political subdivision employee is entitled to immunity under R.C. 2744.03(A)(6)(b) will ordinarily be a question of fact. *Hanging Rock, supra*, at ¶ 18. Summary judgment is appropriate only when the facts are clear and fail to rise to the level of conduct that could be construed as malicious, in bad faith, or wanton and reckless.

{¶34} Upon review of the evidence in this matter, and viewing the evidence in the light most favorable to Appellee Clark, we find there are no genuine issues of material fact. We find, upon the record before us and as a

matter of law, Appellant Campbell's conduct did not constitute reckless disregard for the safety of others that is unreasonable under the circumstances and substantially greater than negligent conduct.

{¶35} The evidence in this matter demonstrates that Appellant Campbell's work schedule was from 8:00 a.m. to 3:00 p.m. She learned that the child was missing around 2:30 p.m., while still within the course of her usual work day. When she received this information, she got in her van to assist in the search. While she testified there was no formal search policy, her testimony indicates she was instructed to look for the missing child. She testified: "They just really said like all-hands—you know, everyone to look."

{¶36} Based on our review, we cannot find evidence that Appellant Campbell was manifestly outside the scope of her employment. She had been working for Appellant Ross County on the accident date. She learned the child was missing during her regular working hours. Her testimony indicates that, with no formal policy in place, her understanding was that "everyone" was expected or encouraged to assist in the search.

{¶37} Furthermore, Appellant Campbell's testimony regarding the motor vehicle collision itself, and the lack of evidence to the contrary, suggest that Appellant Campbell did not act with reckless disregard for the

safety of others. We emphasize the lack of evidence to the contrary due to the fact that Appellee's deposition was never filed with the trial court. Because Appellee's deposition was not properly part of the record below, it is therefore, not in the record on appeal. Thus we cannot consider it. See Civ.R. 56; App.R. 9(A). *See* also, *Minix v. Collier,* 4th Dist. Scioto No. 99CA2690, 2000 WL 1154055 (Aug. 4, 200), at *5. It is well-settled that "[a]ppellate review is limited to the record as it existed at the time the trial court rendered its judgment." *Bank of Am., N.A. v. Robledo*, 10th Dist. Franklin NO. 13AP278, 2014-Ohio-1185, at ¶ 33; *Franks v. Rankin,* 10th Dist. No. 11AP-962, 2012-Ohio-1920, ¶ 73, citing *Wiltz v. Clark Schaefer Hackett & Co.,* 10th Dist. No. 11AP–64, 2011-Ohio-5616, ¶ 13. Nor can " '[a] reviewing court * * * add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter.' " *Id.*, quoting S*tate v. Ishmail*, 54 Ohio St.2d 402 (1978), paragraph one of the syllabus; *see also*, *State v. Lowery,* 4th Dist. Ross No. 2016-Ohio-7701, at fn.

{¶38} Regarding the collision, Appellant Campbell testified she was in the Veterans Parkway area when she received a phone call that the missing child had been located. When she turned her vehicle to leave the area, she had moved only the nose of her van onto the bike path when she

was struck by Appellee's ATV. Appellant Campbell testified she looked both ways prior to pulling out and sustaining the impact. There is no evidence Appellant Campbell's driving licensures were not in good standing; no evidence that she was not wearing her glasses as required; no evidence that Appellant Campbell was traveling at a high rate of speed at the time of the impact; and no evidence of other negligence.

{¶39} Appellant Campbell acknowledged in her testimony that she was using her cell phone at the time of the accident for the purpose of confirming with a secretary at the Pioneer Center that the missing child had been located. Common sense dictates that this was a necessary call and nothing of a frivolous or personal nature. Appellant Campbell testified that a missing child was an unusual occurrence and to her knowledge, there was no policy in place in dealing with the situation. However, the allegations against both appellants do not concern the handling of the missing child or the search itself. It would appear that Appellant Campbell used common sense in responding to an unfolding situation which arose in the course of her work day. Considering the entirety of the evidence, we do not find anything in the record creating a genuine issue of material fact about Appellant Campbell's operation of Appellant Ross County's van or suggesting that her operation of the van was characterized by conscious

disregard or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and would be substantially greater than negligent conduct.

{¶40} For the foregoing reasons, we find no genuine issues of material fact and Appellant Campbell is entitled to immunity pursuant to R.C. 2744.03(A)(6) as a matter of law. There is no evidence in this record to suggest that Appellant Campbell intended to cause harm, breached a known duty through an ulterior motive or ill will, or that she had a dishonest purpose. Therefore, we find Appellants' third assignment of error has merit and is hereby sustained. The judgment of the trial court denying Appellant Campbell the benefit of immunity is reversed.

{¶41} Furthermore, in light of our finding that Appellant Campbell is entitled to immunity pursuant to R.C. 2744.03(A)(6), we need not consider the third assignment of error. There, Appellants argued that the trial court erred by denying Appellant Campbell immunity pursuant to the Workers' Compensation chapter, particularly R.C. 4123.741. However, based on our conclusion herein, the third assignment of error has become moot and we need not consider it.

3.  <u>Did the trial court err by denying immunity to Ross County DD pursuant to</u> <u>R.C. 4123.74?</u>

{¶42} In general, political subdivisions are immune from liability for personal injuries caused by any act of the political subdivision or its employees. R.C. 2744.02(A)(1). *See Strayer v. Barnett,* supra, at ¶ 19. *See also Burchard v. Ashland County Board of Developmental Disabilities,* 2018-Ohio-4408, 122 N.E.3d 266 (5th Dist.), at ¶ 23.

{¶43} We first address the board of developmental disabilities contention that it is sui juris, i.e., it does not have full capacity and rights, including the capacity to be sued, and therefore is not capable of being sued.[3]  While a developmental disabilities board is not explicitly contained in the Revised Code's definition, R.C.2744.01(F) defines "political subdivision" or "subdivision" as: " a municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state." Citing R.C. 2744.01(F), the second appellate district in *Strayer* found it to be undisputed that the Clark County Board of Developmental Disabilities is a political subdivision. *Id*. at ¶ 19.  Citing *Strayer,* the fifth appellate district court in *Burchard, supra,* also found that the Ashland County Board of Developmental Disabilities is undisputedly a political subdivision. *Id*. at ¶ 23.  Given that a board of developmental disabilities is not explicitly listed,

---

[3] See *Mollette v. Portsmouth City Council,* 169 Ohio App. 3d, 2006-Ohio-6289, 863 N.E. 2d 1092, at ¶14.

the second and fifth appellate courts must have reasoned that a board of developmental disabilities is a "body corporate and politic responsible for governmental activities in a geographic area smaller than that of a state." We would agree therefore, that Appellant Ross County, is a political subdivision, as defined by R.C. 2744.01(F), and is capable of being sued.

In this case, the trial court overruled the motion for summary judgment in a conclusory fashion.  In the underlying complaint, Appellee claimed Appellant Ross County was liable under a theory of respondeat superior/wrongful entrustment, for Appellant Campbell's actions.  The doctrine of respondeat superior is premised on agency principles which impose liability upon an employer for the acts done by an employee in the course and scope of employment. *Friga v. E. Cleveland,* 8th Dist. Cuyahoga No.  88262, 2007-Ohio-1716, at ¶ 25.  The theory behind liability is that the employee's acts are imputed to the employer because the employee acting within the course and scope of employment, is assumed to do only those acts which benefit the employer.  *Id*.

{¶44} In *Friga,* plaintiffs-appellants Scott and Ann Friga, son and mother, appealed from summary judgments entered against them on their claims of malicious prosecution, emotional neglect, negligence and consortium claims made against defendants-appellees the City of East

Cleveland, the mayor and law director of the city of East Cleveland, and officers of the city of East Cleveland Police Department.  In *Friga*, the appellate court observed the basis for holding the mayor of East Cleveland liable appeared to be respondeat superior. In the brief in opposition to summary judgment, appellant stated that he was:

 " * * * arrested and charged by an employee of the City of East Cleveland, Officer Hicks. He was prosecuted by the City of East Cleveland Prosecutor. All of the above-named individuals are supervised and reported to the safety director/mayor of the City of East Cleveland."

{¶45} After setting forth the doctrine of respondeat superior, the Friga court also observed that "when an employee commits an intentional tort, it is assumed that the employee did not act within the course and scope of employment, for intentional torts generally encompass bad acts which have no place in the employment relation."  *Id*. at ¶ 25, quoting, *Byrd v. Faber,* 57 Ohio St.3d 56, 58, 565 N.E.2d 584 (1991).  The *Friga* court further observed at ¶ 26:

> In *City of Greenfield v. Schluep,* 4th Dist. Highland No. 95CA8,
>
> 2006-Ohio-531, the Fourth District Court of Appeals stated at
>
> ¶ 20:  "Traditional principles of agency are not applicable in
>
> considering a political subdivision's claim for immunity.

*Woods v. Wellston*, (Jun. 15, 2005), S.D. Ohio, Eastern Division, No. 2:02 CV 762. In *Woods*, the court held that the City of Wellston was entitled to summary judgment on the plaintiff's tort claims, including a claim of malicious prosecution, against the city for the actions of its alleged agents, various police officers and city officials. The court held: 'Common law agency principles, however, are clearly trumped by the Political Subdivision Tort Liability Act. See *Reno v. City of Centerville,* 2nd Dist. No. 20078, 2004 Ohio 781, at ¶ 53 ("[a] political subdivision may not be held liable under a theory of respondeat superior unless one of the exceptions to the sovereign immunity listed in R.C. 2744.02(B) applies")."

{¶46} The *Friga* court held at ¶ 28:

The same rationale applies in this case: the application of common law agency principles of respondeat superior cannot waive the city's immunity, and by direct implication, the mayor's immunity. The court did not err by granting the mayor summary judgment on grounds that she was immune from suit for actions undertaken by a city employee. Of course, this conclusion presupposes that there was liability in the first

instance. Our affirmation of the court's summary judgment in favor of [the officer] necessarily means that reasonable minds could not conclude [the officer] acted in a manner that would revoke his immunity for performing a governmental function. Since he did not lose immunity, there is no basis for applying respondeat superior [to the city of E. Cleveland.]

{¶47} The same rationale as set forth in *Friga* is equally applicable herein. As set forth above, we have concluded that Appellant Campbell is entitled to immunity as a matter of law pursuant to R.C. 2744.03(A)(6). Since we found that none of the three exceptions applied to remove Appellant Campbell from the benefit of immunity, there is no basis for applying respondeat superior to Appellant Ross County. Therefore, Appellant Ross County is also entitled to judgment as a matter of law. Thus, we need not consider Appellant Ross County's arguments under the first assignment of error as it has become moot.

**JUDGMENT REVERSED.**

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT BE REVERSED. Costs shall be divided equally between the parties.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. and Hess, J. concur in Judgment and Opinion.

For the Court,

_____
Jason P. Smith
Presiding Judge

### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**